UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE K.,<br><br>                                Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>                                Defendant. | Case No.: 3:21-cv-00405-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[ECF No. 16]** |

Plaintiff Jacqueline K. ("Plaintiff") filed this action on March 8, 2021, seeking review of the Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Social Security Income. ECF No. 1. The parties consented to proceed before a Magistrate Judge on March 12, 2021. ECF No. 7; General Order 707 (S.D. Cal. Apr. 12, 2019). Pursuant to the Court's Order, the parties filed a Joint Motion for Judicial Review on March 10, 2022, stating their positions on the disputed issue in the case. ECF No. 16. The Court has taken the Joint Motion under submission without oral argument.

For the reasons set forth below, the Court **GRANTS** the Joint Motion, **REVERSES** the Commissioner's denial of benefits to Plaintiff, and **REMANDS** for further proceedings.

## I. PROCEDURAL BACKGROUND

On June 23, 2016, Plaintiff[1] filed an application for Supplemental Security Income, alleging a disability onset date of January 1, 2000. AR 220. On March 28, 2019, following a hearing, an administrative law judge ("ALJ") issued a Decision denying Plaintiff's application. AR 80. Plaintiff appealed, and on April 9, 2020, the Appeals Council remanded the claim back to the same ALJ to address Plaintiff's abilities "to perform mental work activities in a work setting." AR 98. On November 3, 2020, following a hearing, the ALJ issued a second decision denying Plaintiff's application. AR 10. The Appeals Council denied Plaintiff's request for review on January 13, 2021. AR 1. When the Appeals Council denied Plaintiff's request for review, the ALJ's second decision became the final decision of the Commissioner. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008).

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676. 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal

---

[1] Plaintiff was born in 1968. ECF No. 9, Certified Administrative Record ("AR") 220. She has no past relevant work experience. AR 21.

quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

### III.   SUMMARY OF ALJ'S FINDINGS

An ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, an ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the application date of June 9, 2016. AR 15.

At step two, an ALJ must determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Id.* Here, at step two, the ALJ determined that Plaintiff has two severe impairments: depression and anxiety. AR 16.

At step three, an ALJ must determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listings") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsberry*, 468 F.3d at 1114. Here, the ALJ determined that Plaintiff's severe impairments, separately or in combination, do not meet or medically equal an impairment in the Listings. AR 16.

Between step three and step four, an ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and

continuing basis." Soc. Sec. Ruling ("SSR")[2] 96-9p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). It reflects the most a claimant can do despite her limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments – even those that are not severe (*see* 20 C.F.R. § 416.945(a)(1)–(2), (e)) – and must assess her "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). The RFC assessment is an administrative finding reserved to the ALJ. 20 C.F.R. § 416.927(d)(2). It must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 416.945.

Here, the ALJ assessed that Plaintiff's RFC allows her "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out unskilled job instructions and jobs [sic] duties on a sustained basis; can interact appropriately with coworkers and supervisors in a non-collaborative and non-team work setting; limited public contact that is brief and occasional; can appropriately respond to work routines and changes at the workplace; appropriately use judgements and make work related decisions; respond appropriately to supervision, coworkers, and usual work situations; and appropriately respond to changes in a routine work setting." AR 17.

At step four of the disability analysis, if an ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied.

---

[2] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

*Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.* Here, at step four, Plaintiff had no past relevant work, so the ALJ moved to step five.

At step five, the burden shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.960(c)(1), (c)(2); *see also* 20 C.F.R. § 416.920(g)(1). An ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsburry*, 468 F.3d at 1114–15; *Hill*, 698 F.3d at 1162. Here, at step five, the ALJ found that Plaintiff could perform the occupations of cleaner, housekeeper, and laundry worker, so the ALJ determined that Plaintiff was not disabled.

### IV. THE ALJ ERRED IN DISCREDITING PLAINTIFF'S TESTIMONY

Plaintiff contends that the ALJ erred when he rejected Plaintiff's testimony regarding the severity and extent of her symptoms without stating specific, clear and convincing reasons for doing so. ECF No. 16 at 10. Plaintiff argues that this was harmful error, and the Court should remand for an award of benefits to Plaintiff under the "credit as true" rule. *Id*. at 15, 20–21.

Defendant denies that the ALJ erred in discrediting Plaintiff's testimony and argues that the medical evidence contradicts Plaintiff's claimed symptoms and limitations. *Id*. at 17. Alternatively, if the Court finds error, Defendant contends that it would be improper to remand for an award of benefits because the record does not show clearly that Plaintiff is disabled. *Id*. at 21–23.

For the reasons set forth below, the Court finds that the ALJ committed reversible error in evaluating Plaintiff's testimony.

**A. Legal Standard**

An ALJ evaluating a claimant's subjective complaints of pain must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, an ALJ must assess whether there is objective medical evidence to support the complaints. *Id.* If that is the case, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony she or he finds not to be credible ... and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).[3] "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

---

[3] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 416.929. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, 848 F. App'x 718, 721 (9th Cir. 2021) (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) (same, in case involving an ALJ's opinion issued in January 2019). *See also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

If the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278. It is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Id.* A court is therefore "constrained to review the reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

### B. Plaintiff's Testimony

At the hearing on October 28, 2020, Plaintiff testified that she cannot work because of depression and anxiety. AR 33. She stated that she is "highly anxious," does not "handle stress well at all," and finds that deadlines are "very stressful" and make her "shut down." AR 33. She testified that she has anxiety "just from being around people," that she thinks people look at her in a weird way, and that she does not "do well in social situations at all." AR 34.

Plaintiff stated that she has difficulty with focus, concentration, and paying attention. AR 34. She cannot multi-task at all. AR 37. She has to "fix on one thing" and when she loses focus, it takes her "20 minutes or so to get back on track to whatever it was." AR 37.

With respect to her daily activities, Plaintiff testified that does not do "a whole lot" during the day. AR 36. She looks at the computer and gets some housework done. AR 36. She generally has no interest in doing things, no real commitments, and not much of a social life. AR 36. She cooks, cleans, does laundry, and shops "in moderation." AR 36. Although she stated that medication makes her symptoms better, she also stated that she still goes "through cycles" with her depression. AR 35.

### C. The ALJ's Reasons for Rejecting Plaintiff's Testimony

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms, satisfying the first step of the inquiry. AR 18. The ALJ found no evidence of malingering. The ALJ was therefore required to state "specific, clear and convincing reasons, supported by substantial evidence from the administrative record" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms. *Austin v. Saul*, 840 F. App'x 899, 901

(9th Cir. 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (punctuation omitted)). The Court finds that the ALJ erred in rejecting Plaintiff's testimony because the reasons given by the ALJ for doing so did not identify specific testimony that was contradicted, and the reasons were not clear and convincing. *See Trevizo*, 871 F.3d at 679.

### 1. Failure to Identify Inconsistent Testimony

An ALJ is required to "specifically identify the testimony ... he finds not to be credible and ... explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. Here, the ALJ made a boilerplate statement regarding Plaintiff's testimony that is commonly found in ALJ decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 18. Courts have found this same language to be too general and boilerplate to satisfy the requirement that an ALJ identify the testimony of the claimant that should be discredited. In *Lambert*, for example, the Ninth Circuit found that identical boilerplate language was insufficient to meet the ALJ's burden:

> The ALJ's decision does not meet the requirements set forth in our cases and does not permit meaningful review. The ALJ noted generically that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence in the record for the reasons explained in the decision." But this "boilerplate statement" by way of "introductory remark," which is "routinely include[d]" in ALJ decisions denying benefits, did not "identify what parts of the claimant's testimony were not credible and why."

*Lambert*, 980 F.3d at 1277; *Burrell*, 775 F.3d at 1138 (general statement that testimony is "inconsistent in some unspecified way" is insufficient); *Treichler*, 775 F.3d at 1103 (noting

that identical boilerplate statement was insufficient because the "ALJ must identify the testimony that was not credible").

The problem with this language is that "statements concerning the intensity, persistence and limiting effects" is too general a description for the Court to understand precisely what portions of Plaintiff's testimony are claimed to be inconsistent with other evidence in the record. *Isis A. v. Saul*, No. 18cv01728-W-MSB, 2019 WL 3554969, at *4 (S.D. Cal. Aug. 5, 2019) ("When an ALJ fails to specify the rejected testimony and how the evidence provides clear and convincing reasons to reject it, the reviewing court cannot proceed without 'substitut[ing its own] conclusions for the ALJs, or speculat[ing] as to the grounds for the ALJ's decision.") (quoting *Treichler*, 775 F.3d at 1103). Plaintiff's testimony is that she is highly anxious around people, gets very stressed about deadlines, cannot multi-task, loses focus and cannot get back on track without difficulty, and lacks interest in the daily activities of life because of her depression. These symptoms and effects of her depression and anxiety disorder are different and cannot be treated as a unitary complaint. This leaves the Court to attempt to ascertain whether the evidence relied on by the ALJ is inconsistent with any, or all, of these symptoms and effects. That alone is reversible error. *Lambert*, 980 F.3d at 1278. Nonetheless, the Court will address the reasons provided by the ALJ to discredit Plaintiff's testimony.

### 2. Consultative Psychiatric Evaluation by Dr. Halley

First, the ALJ considered the consultative psychiatric evaluation conducted by Jennifer Halley, D.O. AR 18. The ALJ pointed out that Plaintiff drove herself to the evaluation; had euthymic mood and bright affect; reported to Dr. Halley that taking Celexa had helped her moods and stress level; and described activities of daily living including housekeeping, preparing meals, personal hygiene, and managing her finances. AR 18. Plaintiff also performed well on cognitive tests. AR 19.

Although the ALJ accurately summarized Dr. Halley's evaluation, he failed to explain why Dr. Halley's evaluation provides a clear and convincing reason for rejecting Plaintiff's testimony. For example, Plaintiff's abilities to drive herself to the appointment

and perform basic activities of daily living are not inconsistent with her testimony that she has difficulties with focus, concentration, or interacting with people. *See Burrell*, 775 F.3d at 1128 (ALJ's reasoning was insufficient because he failed to explain why claimant's daily activities were inconsistent with being depressed and unable to be around other people). Similarly, Plaintiff's adequate performance on cognitive tests is not inconsistent with her testimony. *Ghanim*, 763 F.3d at 1164 ("[O]bservations of cognitive functioning during therapy sessions do not contradict [claimant's] reported symptoms of depression and social anxiety."). Dr. Halley's evaluation does not provide clear and convincing reasons to reject Plaintiff's testimony.

### 3. Treatment Notes

Next, the ALJ stated that the treatment notes in Plaintiff's medical records "documented no significant objective findings." AR 19. The Court has reviewed the evidence cited by the ALJ to support this reasoning and finds it plainly deficient. Even if the evidence supported the ALJ's position, he fails to explain how the lack of objective findings is inconsistent with Plaintiff's testimony, particularly given that the ALJ already found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" at the outset of his analysis of her testimony. AR 18. "The distinction between medical evidence failing to support a plaintiff's testimony rather than being inconsistent is critical because the latter may qualify as a specific, clear and convincing reason to reject a plaintiff's testimony, while the former does not." *Isis A.*, 2019 WL 3554969, at *7.

With respect to the evidence, the ALJ referred to a letter dated May 24, 2018, from Plaintiff's treating psychologist that indicated Plaintiff was first seen at the Family Wellness Center for psychiatric assessment in May 2018 and that she was "in the process of stabilizing on medications." AR 19. This letter, however, does not in any way suggest that Plaintiff's issues are insignificant or near resolution. Instead, it states that Plaintiff is "still experiencing debilitating symptoms related to her diagnosis of Unspecified Mood

Disorder," and that she will "need frequent follow up visits until stabilization can occur." AR 429.

Although the ALJ acknowledged that a subsequent letter from Plaintiff's treating psychologist dated September 25, 2018, confirms Plaintiff's diagnosis of major depressive disorder and moderate, recurrent, and anxiety disorder with chronic symptoms, AR 460, he claimed that later treatment notes showed that Plaintiff denied symptoms of depression. This is simply cherry-picking the record, because most of the records the ALJ relies on are from Plaintiff's gynecological appointments – not from providers who were treating her for depression. *E.g.*, AR 466, 474, 488, 490, 493, 499, 503, 555 (all references to depression screenings at gynecological appointments). One of the treatment notes the ALJ cited from Plaintiff's gynecologist appointments in fact states that Plaintiff advised she ***did*** feel "down – depressed – or hopeless," and she "felt little interest or pleasure in doing things." AR 495. Another treatment note cited by the ALJ as evidence that Plaintiff denied symptoms of depression is from an appointment where Plaintiff told her primary care doctor "she is detached didn't celebrate Christmas and didn't care that she didn't," AR 707, and where the notes indicate she has an active diagnosis of depression. AR 708.

Other treatment notes that the ALJ did not reference include reports by Plaintiff of feeling down, depressed, and anxious. *E.g.*, AR 435 (request for referral to psychiatrist); AR 446–57 (progress notes from Dr. Paul Liederman indicating depression); AR 460 (letter from psychologist dated September 25, 2018 stating that "[d]espite [Plaintiff's] consistent attendance and support of psychotropic medication, minimal progress has been made in the reduction of [her] chronic depression."); AR 555 (depression has not improved); AR 674 (depression medication not as effective); AR 721 (positive depression screening). The ALJ cannot selectively cite to treatment notes that may suggest improvement but ignore the overall context in which they are made. *Ghanim*, 763 F.3d at 1162 (treatment notes must be "read in context of the overall diagnostic picture the provider draws") (citations omitted). The treatment notes cited by the ALJ do not provide clear and convincing reasons for rejecting Plaintiff's testimony.

### 4. Consultative Psychiatric Evaluation by Dr. Irving

Next, the ALJ considered the consultative psychiatric evaluation conducted by Karis Irving, M.D. AR 19. The ALJ noted that "[o]ther than depressed/anxious mood and reduced memory," her mental status examination was "within normal limits with cooperative attitude normal speech, alert, fully oriented, ability to perform Serial 7s, and adequate insight and judgment." AR 19. Plaintiff reported to Dr. Irving that her medication and therapy regime were helping with her depression. AR 19.

The ALJ's summary of Dr. Irving's evaluation ignores several aspects of the evaluation that are entirely consistent with Plaintiff's testimony. Dr. Irving described Plaintiff as "anxious," with "rambling" and "emotional" speech. AR 511. Plaintiff's mood during the evaluation was "depressed and anxious." AR 511. Dr. Irving found Plaintiff's prognosis to be "guarded." AR 512. Dr. Irving's handwritten notes indicate that Plaintiff is "easily flustered, gets anxious which leads [to] problems with concentration and memory;" her anxiety "exacerbates" issues with memory and concentration, making her mind go blank and very forgetful; and that Plaintiff had "poor recall" and was "very restless and distracted during evaluation." AR 505-06. The selective observations that the ALJ noted from Dr. Irving's evaluation do not provide clear and convincing reasons to reject Plaintiff's testimony.

### 5. Improvement with Medication

Next, the ALJ found that Plaintiff's "mental symptoms generally improved on medication." AR 19. The medical record does not support this finding. Two letters from Plaintiff's treating psychologist – one from September 2018 and the other from October 2020 – state that "[d]espite [Plaintiff's] consistent attendance and support of psychotropic medication, minimal progress has been made in the reduction of [Plaintiff's] chronic depression." AR 480, 830. The consultative evaluations also show a degradation of Plaintiff's condition from the initial evaluation on October 18, 2016, which indicated Plaintiff's prognosis was "good," AR 420, to the second evaluation on February 10, 2019, which indicated Plaintiff's prognosis was "guarded." AR 512.

Even if the record might reflect intermittent signs of improvement, they would not be sufficient to contradict Plaintiff's testimony. "The fact that a person suffering from depression makes some improvement 'does not mean that the person's impairment [] no longer seriously affect[s] [his] ability to function in a workplace.'" *Ghanim*, 763 F.3d at 1162 (quoting *Holohan*, 246 F.3d at 1205); *Garrison*, 759 F.3d. at 1017 ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms, ... [and] an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."). The ALJ's finding that Plaintiff's symptoms improved with medication does not provide a clear and convincing reason to reject her testimony.

### 6. Failure to Seek Treatment

Finally, the ALJ stated that even though Plaintiff claimed to be disabled due to her depression since January 1, 2000, "the earliest mental treating notes are dated 2018." AR 19. This is simply not correct. The record includes treatment notes from Dr. Liederman from 2014 and 2015 at Exhibit 10F. AR 446–57. Dr. Irving expressly referred to those notes in her evaluation. AR 509. According to Dr. Irving, although the notes are difficult to read, they include "diagnoses of Attention Deficit Hyperactivity Disorder and Depression." AR 509. The ALJ's finding that Plaintiff's testimony is not credible because she failed to seek treatment before 2018 does not provide a clear and convincing reason to reject her testimony. *See Burrell*, 775 F.3d at 1139 (ALJ committed plain error when he "overlooked significant medical records when assessing whether the medical record conflicted with claimant's testimony"); *Holohan*, 246 F.3d at 1208 (finding error where the ALJ's claim "is belied by the record.").

### V. THE APPROPRIATE REMEDY

Having found that the ALJ erred, the next steps for the Court are to determine whether the error is harmless, and if not, the appropriate remedy. If an ALJ's error is harmless, his decision will not be reversed. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An

ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Id.* at 1115 (quoting *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Here, the ALJ's error was not harmless.

The ALJ's error impacted his consideration of the medical opinion of Plaintiff's treating psychologist, Dr. Karilyn Richards, and third-party testimony from Plaintiff's son. The ALJ rejected Dr. Richards's opinion outright because he contended it was primarily based on Plaintiff's statements regarding her symptoms, which the ALJ found to be not credible. AR 20. The ALJ's erroneous assessment of Plaintiff's credibility therefore necessarily impacted his decision to give no weight to Dr. Richards's opinion. *See Burrell*, 775 F.3d at 1140–41. The ALJ also disregarded a submission from Plaintiff's son in part because of the ALJ's erroneous interpretation of the treatment notes discussed above. AR 20. The error was not harmless.

The Court applies the "credit-as-true" rule when determining whether a case should be remanded for payment of benefits or for further proceedings. *Trevizo*, 871 F.3d at 682. That test requires the court to assess three factors: (1) whether "the record has been fully developed and further administrative proceedings would serve no useful purpose;" (2) whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and (3) whether "the ALJ would be required to find the claimant disabled on remand" if the discredited evidence were treated as true. *Id.* at 683 (quoting *Garrison*, 759 F.3d at 1020). If all three factors are present, a court can remand the case for payment of benefits. *Burrell*, 775 F.3d at 1141.

The Court need not look beyond the first factor to determine that the proper remedy is to remand for further proceedings. The record has not been fully developed as to what would be the proper RFC for Plaintiff if her testimony is considered credible, because the weight given to Dr. Richards's opinion and the statements of Plaintiff's son should be different if Plaintiff's testimony is not discredited. On remand, the ALJ must reconsider his assessment of Dr. Richards's opinion and the submission by Plaintiff's son in light of this order. Because Plaintiff applied for benefits prior to March 27, 2017, the treating

physician rule applies, and the ALJ must assess Dr. Richards's opinion in light of that more deferential standard. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). *See also* 20 C.F.R. § 416.927(c)(2) (setting forth the treating physician rule for claims filed before March 27, 2017).

The ALJ's rejection of Dr. Richards's opinion is problematic for an additional reason that should be addressed on remand. The ALJ did not treat Dr. Richards's medical source statement as an opinion at all, even though it is clearly "a statement from a medical source about what [Plaintiff] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in the following abilities[,]" which include but are not limited to the ability "to perform mental demands of work activities, such as understanding; remembering; maintain concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" 20 C.F.R. § 416.913(a)(2). The reason the ALJ gave for this outright rejection is that Dr. Richards's opinion does not represent her own analysis, but merely repeats "what the claimant said to her." AR 20. There is no support for the ALJ's finding in this regard. At the time of her opinion, Dr. Richards had been treating Plaintiff for eighteen months. AR 547–48 (weekly treatment since February 16, 2018; opinion dated October 11, 2019). Dr. Richards's opinion is replete with her own analysis and observations: "Client's symptoms of depression and anxiety affect her ability to focus [and] retain information," (AR 542); "[Client] has low frustration tolerance and is easily irritable due to depression," (AR 543); "[Client] generally presents tired, low in energy, with flat affect," (AR 544); "[W]hen more depressed [client] will lack eye contact and ability to focus, but otherwise will engage in sessions," (AR 544); "Many interventions to try to help [client's] focus and follow through including lists, notes in her phone, mood checks, etc. have made no difference," (AR 544); "[Client's] engagement in session depends on mood, ranging from avoidant and irritable to cooperative but lacking insight and motivation." (AR 547). To avoid further error, the ALJ should consider Dr. Richards's

opinion on remand as a medical source statement and evaluate it in accordance with the treating physician rule under 20 C.F.R. § 416.927(c)(2).

In remanding for further proceedings, the Court is following the Ninth Circuit's guidance that the proper course, save for exceptional circumstances, is to remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1100 ("we generally remand for an award of benefits only in 'rare circumstances'") (quoting *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004)). To be clear, the Court is ***not*** denying Plaintiff's request to remand for benefits because it has serious doubts about Plaintiff's disability. *Cf. Burrell,* 775 F.3d at 1141. Plaintiff's RFC and the ultimate disability determination depend on a proper assessment of Dr. Richards's opinion and third-party statements, which did not occur in this case because of the error regarding Plaintiff's testimony. *See Dominguez*, 808 F.3d at 409 (appropriate to remand case for further proceedings because "it is up to the ALJ, not the court" to formulate a proper RFC).

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ committed reversible error by rejecting Plaintiff's testimony without providing specific, clear, and convincing reasons for doing so.

The Court therefore **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), and **REMANDS** this action for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: September 30, 2022

_____
Honorable Allison H. Goddard
United States Magistrate Judge